**FRANCISCO GARRATON, INC.,**
Plaintiff,

v.

**LANMAN & KEMP–BARCLAY & CO.,
INC., Defendant.**

**Civ. No. 81–2444CC.**

United States District Court,
D. Puerto Rico.

March 14, 1983.

Tomás Céspedes, San Juan, P.R., for plaintiff.

Reichard & Colberg by Herman W. Colberg, San Juan, P.R., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

The Court must determine whether the provisional remedy provided by Article 3A of public law No. 75 of June 24, 1964, *P.R. Laws Ann.,* Tit. 10, Sec. 278, *et seq.* (Law 75) should be granted to plaintiff.[1] An evidentiary hearing was held on January 14, 1983. Plaintiff's fundamental contention has been that the purpose of a letter agreement signed on January 1, 1970 by Francisco Garratón on its behalf and by Mr. Bonander, for defendant, was to bring their 1958 distributor relationship within the ambit of Law 75. It urges that the 1970 letter agreement was intended to supersede and extinguish the 1958 relationship and that this resulted in the application of Law 75 to their relationship as principal-dealer. Plaintiff also tried to prove that the dealership was terminated unilaterally and without just cause on or about October 1981. According to defendant's version the 1970 letter was only an amendment to the dealer-principal relationship which existed since 1958 to increase the dealer's commission to

---

1. The prior procedural history of this case is set forth in the Opinion and Order of October 26, 1982.

15% and not a contract designed to grant its dealer in Puerto Rico the protection of Law 75. As to the cause for termination aspect of the case, the principal presented evidence in support of its contention that the contract was canceled due to plaintiff's admitted reduction of operations and its financial inability to handle defendant's line of products after losing another line which accounted for 80% of its business.

The first question that must be answered is whether the statutory scheme upon which plaintiff relies governs the contractual ties which bind these litigants. In *Warner Lambert Co. v. Superior Court,* 101 PRR 527 (1973) the Puerto Rico Supreme Court held that the application of Law 75 to distributor relationships established before its effective June 1964 date violates the Contract Clause of the Constitution of Puerto Rico; "Constitución del Estado Libre Asociado de Puerto Rico" Art. II, Sec. 7 (P.R.). The Court, emphasizing the drastic adverse effects that Law 75 had on principals, concluded that to apply the statute to contracts in existence before it would violate the constitutional guarantee against the impairment of contractual obligations. After reviewing the civil law system on the extinction of obligations by novation,[2] it rejected the argument that a post-Law 75 modification which increased the commission fixed in the dealer's contract, without more, resulted in extinguishing the pre-Law 75 obligation.

The Civil Code of Puerto Rico sets forth the general guidelines which configurate the concept of novation. An obligation may be modified by changing its object or principal conditions, yet, in order for it to be extinguished and substituted by another, it is necessary that it be so expressly declared or that the old and new obligations be totally incompatible. Arts. 1157, 1158 Civil Code, *P.R.Laws Ann.,* Tit. 31, Secs. 3241, 3242.[3] Thus, extinctive novation comes into play even when the contractual

condition modified is of secondary importance as long as that is what the parties intended and have conclusively stated that the prior contract is canceled and substituted by another. Novation is never presumed. The will to novate must be express and it must be established without a trace of doubt. *Warner Lambert Co. v. Superior Court,* at 544, 545 and cases there cited. In the absence of an express declaration, extinctive novation operates only when the two obligations are absolutely incompatible. There must be such a radical change in the nature of the new obligation when compared with the old as to make them mutually excludable and unable to coexist. *G. & J., Inc. v. Doré Rice Mill, Inc.,* —— PRR ——, 108 DPR 89, 96 (1978).

The Court has warned that the particular facts of each case should be carefully examined to determine whether or not extinctive novation exists for the termination of the principal obligation carries with it the extinction of the guarantees and other accessory rights. *Warner Lambert,* at 547. Such drastic results can only be produced when the parties are fully aware of them. *Id.* Modifications which are mainly quantitative in nature do not extinguish the original main obligation which remains in effect with all its supplementary and accessory guarantees and rights. *See G. & J., Inc. v. Doré Rice Mills, Inc.,* at 96–98 and authorities there cited. When extinctive novation has not been expressly declared, the doctrine teaches, pursuant to general contract principles which treat the intention of the parties as the foremost consideration in contract interpretation, *see* Art. 1233, Civil Code, *P.R.Laws Ann.,* Tit. 31, Sec. 3471, that the "will" of the parties is the controlling factor in determining the type of novation involved. *Idem* at 91–92. In matters of contract interpretation the Civil Code, as well as Puerto Rico's equivalent parol evidence rule, *see P.R.Laws Ann.,* Tit.

---

**2.** See Article 1110 of the Puerto Rico Civil Code, *P.R.Laws Ann.,* Tit. 31, Sec. 3151.

**3.** Article 1158 provides: "In order that an obligation may be extinguished by another which

substitutes it, it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points."

31, Secs. 3471–3479 and *P.R.Laws Ann.,* Tit. 32, App. IV R. 69, permit resort to extraneous circumstances surrounding the document being interpreted when there appears to be conflict on the written context. *See also Merle v. West Bend Co.,* 97 PRR 392 (1969).

In this case plaintiff does not claim ambiguity in the language of the letter agreement or incompatibility between the 1958 and 1970 agreements. Its position does not rest either on the clear terms of the 1970 agreement for no mention whatsoever of Law 75 is made in it. The letter agreement does not contain a clause expressly stating that the previous contract is terminated and a superseding new one is being created. As the Supreme Court of Puerto Rico observed in *G. & J. Inc. v. Doré Rice Mills,* at 91, the premise which recognizes the extinguishing effect of novation by express declaration offers no difficulty since the parties must have manifested unequivocally what they desire. In such a situation there is no presumption of intention for Article 1158 imposes a specific mode of expressing intention. In our case plaintiff is in effect resting its theory of novation on a presumption of intention. Plaintiff's allegations as to the "real" intention of the parties are premised exclusively on the testimony of Manuel Garratón, one of its officers. He stated that on many occasions his uncle Francisco Garratón, plaintiff's president, mentioned to defendant the need and desire to be covered by Law 75. However, the evidence presented at the hearing shows that he was not present during the final and crucial negotiations between Francisco Garratón, and the officers of Lanman & Kemp which led to the signing of the letter agreement of 1970. The most he could say was that his uncle had expressed this concern to defendant over the telephone during conversations he had overheard. He candidly acknowledged that although the desire to receive Law 75 protection was plaintiff's manifest intention in signing the letter agreement of 1970, defendant's intention in signing said letter was unknown to him. The alleged agreement on Law 75 coverage rests solely on offhand, sporadic references by plaintiff's officers to the law. There is no indication, aside from conclusory and unsupported statements, that defendant acquiesced to these comments and agreed to be bound by Law 75.

█ In light of these circumstances, the application of Law 75 to the parties contractual relationship would alter radically the rights relied on by the principal upon entering the distribution agreement in 1958 which is in no way incompatible with the 1970 modification increasing the commission. It would convert a general buy-sell distribution relationship terminable by any of the parties on sixty days notice to one of indefinite duration which could be terminated only for just cause, as defined in the law. As observed by the Supreme Court of Puerto Rico in *Warner Lambert* at 556–557:

> The definition of just cause was the effect of depriving the principal of the right to terminate the contract at any time. Substantial modification of the contract by which a contractual right of considerable economic value is transferred from one patrimony to another. The impairment is greater when we consider that just cause is an affirmative defense, and, as such, the burden of proof falls on the principal. In the absence of just cause, the principal shall have committed a wrongful act against the dealer and must compensate on the basis of a complex formula of damages.

That defendant intended that its right to unilaterally terminate the contract be destroyed must be supported by something more than plaintiff's flimsy and dubious references to its peculiar needs and its desire to be covered by Law 75. The letter agreement of 1970 merely contains modifications of a quantitative nature and other minor variations to the original contractual relationship established in 1958 that do not significantly alter it and which are not incompatible with it. *See G. & J., Inc. v. Doré Rice Mill, Inc.,* at 96. Plaintiff has failed to show how its alleged intent to substantially alter the relationship to the extent of affixing a Law 75 imprimatur to it was agreed to by both parties so as to

establish, despite the silence of the document and the undisclosed intention of defendant, some sort of verbal pre-contract "meeting of the minds." *See P.R.Laws Ann.,* Tit. 31, Secs. 3371, 3373, 3375, 3391, 3401, 3431. All it has shown is a unilateral intention on its part to receive Law 75 protection. The unilateral expressions and desires of one contracting party, regardless of how persistent or urgent, are not tantamount to extinctive novation, a concept which requires a clear and unambiguous declaration by *both* parties to end their prior contract and to substitute it by another.

Although the Court is aware that Law 75 provisional remedies are liberally dispensed given public policy considerations, *see De Moss v. Kelly Services, Inc.,* 493 F.2d 1012 (1st Cir.1974), the movant cannot be afforded the protection of a law whose applicability to the factual circumstances of its case it has failed to establish. In our situation, proof of such a fundamental element has been totally insufficient. In order to prevail plaintiff had to prove that the requirements of extinctive novation were present in 1970. This it has simply failed to do.

Furthermore, the alleged "unjust" termination claim is equally deficient. According to plaintiff's own admissions, when it approached defendant's officers sometime in June 1981 to seek approval for the transfer of defendant's line of products to Mr. Luis Garratón, a dealer wholly independent from it, it could not continue selling defendant's products for the loss of the Miles Laboratory line which represented about 80% of its total business required that it drastically reduce its operations and work force. These admissions were not controverted by plaintiff in any manner during the evidentiary hearing and its excuses for the decrease in sales immediately after such representations of diminished economic resources and of its transfer request were mainly unrelated to the period in question.

For the reasons stated, the Court finds that plaintiff has failed to justify the granting of the injunctive relief requested.

Accordingly, its request for a provisional remedy pursuant to by Article 3A of Law 75 is hereby DENIED.

SO ORDERED.